1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 11/17/2010**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

BRIAN HEISLER, ROB TEMPLE, THOMAS
TRAUB, and JODY AGERTON, individually and
on behalf of all others similarly situated,

                    Plaintiffs,

          v.

MAXTOR CORPORATION,

                    Defendant.

Case No. 5:06-cv-06634-JF (PVT)

ORDER[1] DENYING WITHOUT
PREJUDICE PLAINTIFFS' MOTION
FOR CLASS CERTIFICATION

[Docket No. 170]

        Plaintiffs' motion for class certification was heard on November 12, 2010.  For the

reasons discussed below, the motion will be denied without prejudice.

## I. BACKGROUND

        Plaintiffs filed this action on October 14, 2006, alleging that Defendant Maxtor

Corporation ("Maxtor") designed, marketed, and sold defective hard disk drives ("HDD's").

Plaintiffs seek to certify two classes.  The first class consists of:

        All end-user persons or entities who purchased in the United States, excluding
        consumers who either lived in or purchased in California, a Maxtor One Touch I
        Family, One Touch II Family, One Touch III Family, Personal Storage 3100
        Family, and/or Personal Storage 3200 Family hard disk drive(s) sold by Maxtor
        Corporation or an authorized Maxtor retailer or distributor that have experienced

---

[1]        This disposition is not designated for publication in the official reports.

1    a failure and (a) reported the failure to Maxtor and/or Seagate (the "Reporting"
2    Class) and (b) who did not report the failure to Maxtor and/or Seagate (the "Non-
     Reporting" Class).

3
4    Plaintiffs' Motion for Class Certification Dkt. 170 at 2-3.  The second class consists of

5    individuals who meet the same criteria but who purchased an HDD in California.  *Id.* at 3.

6        In their Third Amended Complaint ("TAC"), Plaintiffs claim that Maxtor has (1) violated

7    California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq. (the "C.L.R.A."); (2)

8    violated Cal. Bus. & Prof. Code §§ 17200 and 17500; (3) breached its express warranty;[2] and (4)

     profited from unjust enrichment as a result of the acts or omissions described in these claims.
9
                                **II. LEGAL STANDARD**
10
         A party seeking class certification must meet each of the four threshold requirements set
11
     forth in Rule 23(a) of the Federal Rules of Civil Procedure:  (1) the class is so numerous that
12
     joinder of all members is impracticable; (2) there are questions of law or fact common to the
13
     class;  (3) the claims or defenses of the representative party are typical of the claims or defenses
14
     of the class; and (4) the representative party will fairly and adequately protect the interests of  the
15
     class.  *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 580 (9th Cir. 2010).
16
         In addition, the party seeking class certification must show that the action meets the
17
     requirements of at least one of the three subdivisions of Rule 23(b).  *Id.*  Rule 23(b)(1) requires
18
     that prosecution of separate actions by individual members of the class would create a risk of
19
     inconsistent adjudications or of adjudications that would impair the interests of others.  Rule
20
     23(b)(2) requires that: "the party opposing the class has acted or refused to act on grounds
21
     generally applicable to the class, thereby making appropriate final injunctive relief or
22
     corresponding declaratory relief with respect to the class as a whole."  Rule 23(b)(3) requires
23
     that "questions of law or fact common to the members of the class predominate over any
24
     questions affecting only individual members, and that a class action is superior to other available
25

26       [2] The warranty reads as follows: "Maxtor warrants to the original consumer purchaser
27   ("you") that new Maxtor disk drive products ("New Products") will be free from defects in
     material and workmanship for the Standard Warranty Period for the relevant New Product."
28   TAC ¶ 85.

                                          2

1  methods for the fair and efficient adjudication of the controversy."

2                                    **III. DISCUSSION**

3          As an initial matter, it is necessary to address Plaintiffs' argument that the district court

4  may not reach the merits of a given case when ruling on a motion for class certification.

5  However, as the Ninth Circuit recently held in *Dukes*, "[a] district court must sometimes resolve

6  factual issues related to the merits to properly satisfy itself that Rule 23's requirements are met."

7  603 F.3d at 590 (9th Cir. 2010).

8  **A. Rule 23(a) Requirements**

9          **1. Numerosity**

10         District courts analyze Rule 23(a)'s numerosity requirement by looking at the raw

11 number and ascertainability of class members, among other factors.  William W. Schwarzer, et

12 al. *Rutter Group Practice Guide: Federal Civil Procedure Before Trial, Calif. & 9th Cir.*

13 *Editions* ch. 10, section 10:257-64 (West 2010).  "The class members need not be known at the

14 time of certification, [but] class membership must be objectively ascertainable; i.e., it must be

15 possible for the members to identify themselves as a member of the class." *Johnson v. GMRI,*

16 *Inc.,* No. CV-F-07-0283, 2007 WL 963209, at * 7 (E.D. Cal. Mar. 28, 2007).  A putative class

17 composed of statewide members of the "peace movement," for example, does not constitute an

18 adequately defined class.  *Id.*  However, a class defined by precise criteria such as whether a

19 putative class member received a receipt would suffice.  *Tchoboian v. Parking Concepts, Inc.*,

20 No. SACV 09-422, 2009 WL 2169883, at *5 (C.D. Cal. July 16, 2009).

21         Here, the ascertainability of the proposed classes is questionable.  Plaintiffs' definition

22 fails to explain clearly what constitutes a "failure" of the subject hard drives; and, no relevant

23 date range is provided to exclude individuals who may have experienced a failure after

24 expiration of the warranty.  Plaintiffs argue that the nature of a failure can be understood easily

25 by putative class members.  They cite the deposition testimony of Maxtor employee David

26 Cochran, who testified that a hard drive failure occurs when "[t]he datasheet on the drive . . .

27 doesn't spin up and allow the storage and retrieval of data." Sherman Decl., Ex. 1 at 50:6-7.

28 However, Cochran is a skilled technician.  It does not follow that potential class members will

                                              3

1    have the same understanding of "failure."

2         Moreover, there is a real concern that the term could be interpreted too broadly,

3    encompassing even hard drive problems resulting from operator error.  Maxtor points out that

4    the list relied on by Plaintiffs to identify putative class members includes "any person who

5    contacted Maxtor . . . with a claimed problem operating their drive (whether due to operator

6    error or other cause, whether transient or permanent 'failure,' . . . whether in or out of warranty."

7    Dkt. 181 at 19.  The list in question was provided by Maxtor in response to Magistrate Judge

8    Trumbull's order to:

9              [P]roduce the contact information (including names and addresses) for consumers
             who have filed complaints with the company from January 1, 2004 to October 24,
10            2006 . . . regarding premature failures of their hard disk drives and lost data for
             the following product lines: (1) Maxtor One Touch I; (2) Maxtor One Touch II;
11            (3) Maxtor One Touch III; (4) Maxtor Personal Storage 3100; and (4) Maxtor
             Personal Storage 3200.[3]

12

13   Neither the list nor the Plaintiffs' proposed class definition includes objective limitations that

14   would exclude temporary failures or failures occurring as a result of factors other than

15   manufacturing defects.

16        **2. Commonality**

17        "Commonality focuses on the relationship of common facts and legal issues among class

18   members."  *Dukes*, 603 F.3d at 599.  "All questions of fact and law need not be common to

19   satisfy the rule. . . . [The existence of] one significant issue common to the class may be

20   sufficient to warrant certification."  *Id.*  Here, no common defect is alleged.  Plaintiffs allege that

21   Maxtor's manufacturing process is generally defective,[4] yet they provide little specificity as to

22   the ways in which the process is allegedly flawed.

23        Plaintiffs allege that Maxtor does not employ appropriate electrostatic discharge ("ESD")

24   prevention measures. Dkt. 170 at 6. When not contained, ESD can alter the resistance of a hard

25   drive, causing it to fail.  Sherman Decl., Ex. 15 at 69:11-15.  However, Plaintiffs do not explain

26   ───────────────

27        [3] July 31, 2009 Order Granting in Part and Denying in Part Defendant Maxtor's Motion
     for Protective Order and Plaintiffs' Motion to Compel Dkt. 106.

28        [4] Plaintiff's Reply Brief Dkt. 185 at 5.

4

1  how Maxtor's ESD prevention methods are ineffective.  Maxtor employee Robert Lawley

2  testified that employees are required to wear a wrist strap, heel clip, and protective smock to

3  eliminate ESD while working in the labs.  Sherman Decl., Ex. 18 at 157-58.  Lawley testified

4  also that if employees follow these procedures, "there's not a chance, other than that wrist strap

5  being defective or the heel clip being defective or the . . . smock . . . not being on, that would

6  cause an electrostatic discharge at a level high enough to cause a component failure."  *Id.* at

7  157:22-158:3.  Plaintiffs base their claims entirely upon speculation as to the effect of failure to

8  adhere to these prevention measures.

9      Plaintiffs also contend that Maxtor's pre-sale testing methods are deficient.  Dkt. 170 at

10  7.  They claim that Maxtor relies on its suppliers to test components of internal hard drives even

11  though it has no supervisory authority over the suppliers.  *Id.*  Plaintiffs also claim that Maxtor

12  performs no formal testing after hard drives go into mass production.  *Id.*  However, Lawley's

13  deposition testimony indicates that internal drive components in fact are tested by suppliers

14  against the specifications provided by Maxtor's design engineering team, and the components

15  later are retested by Maxtor as part of a fully assembled hard drive.  Sherman Decl., Ex. 20 at

16  131:12-132:3.  Maxtor also performs a trial run with a limited production before the hard drives

17  are mass produced.  Sherman Decl., Ex. 22 at 45:13-23.  Although no additional formal testing is

18  conducted after the trial run, Maxtor does perform data integrity testing throughout production.

19  *Id.* at 46:15-16, 47:11-24.

20      Plaintiffs argue that Maxtor's testing falls below industry standards, but they offer no

21  evidence of what the industry standards actually are.  Dkt. 170 at 7.  They do not explain how

22  Maxtor's supplier testing or data integrity analysis is insufficient.  In fact, Maxtor asserts, and

23  Plaintiffs do not meaningfully dispute, that data integrity testing is the common method used to

24  assess a hard drive's ability to write and read data.  Dkt. 181 at 14.

25      According to Plaintiffs, Maxtor's procedure for testing returned hard drives inadequately

26  diagnoses and corrects errors.  Dkt.170 at 8.  Plaintiffs allege that returned hard drives are

27  analyzed only to determine whether they pass or fail standardized tests, and that no further

28  evaluations are performed to determine the cause of the reported failure or whether that cause

5

1   aligns with the consumer's complaint. *Id.* at 8-9.  Plaintiffs allege that while Maxtor should use

2   its return process as an opportunity to improve its product, instead it abuses that process by

3   searching only for drives that show no defect in testing ("no trouble drives") and can be sent to

4   consumers as refurbished warranty replacement drives. *Id.*  Again, Plaintiffs do not explain how

5   these alleged practices fall below the industry standard.

6       Finally, Plaintiffs contend that Maxtor uses substandard component parts in its hard

7   drives, which produces an inferior final product.  Dkt. 170 at 10.  This allegation is based on the

8   testimony of a Maxtor consultant, Michael Hatch, who testified that Maxtor's Apollo hard drive

9   was designed as "el cheapo drive" because it contained one magnet instead of two.  Sherman

10  Decl., Ex. 45 at 37:3-14.  According to Hatch, a single magnet design causes resonance problems

11  because the hard drive does not have enough magnetic force to ensure that the drive coil

12  maintains an ideal horizontal plane during rotation. *Id.* at 37:3-18. While this testimony might

13  be indicative of design flaws, it is irrelevant as the Apollo drive was not used in any of the

14  products at issue in this case. Cochran Decl. ¶ 22.

15      Even assuming the truth of Plaintiffs' various claims, the commonality prerequisite of

16  Rule 23(a) is not satisfied, as Plaintiffs have not identified a specific defect in Maxtor's

17  manufacturing process.  Under California law, class certification is improper when plaintiffs fail

18  to present evidence that an alleged manufacturing defect in fact exists. *Sony Electronics, Inc. v.*

19  *Superior Court*, 145 Cal.App. 4th 1086, 1097 (Cal.Ct.App. 2006).  Plaintiffs contend that Ninth

20  Circuit precedent does not require the manifestation of a common defect for purposes of class

21  certification. *Wolin v. Jaguar Land Rover North America, LLC*, Nos. 09-55104, 09-55105, 2010

22  WL 3222091 (9th Cir. Aug. 17, 2010).  However, this interpretation of *Wolin* is incorrect.  The

23  plaintiffs in that case did allege a common design defect in Land Rover vehicles. *Id.* at *1.  The

24  Ninth Circuit explained that plaintiffs need not identify the exact *cause* of the defect for purposes

25  of class certification, but the requirement that there must be a defect was never questioned. *Id.* at

26  *4 (stating "Although individual factors may affect premature tire wear, they do not affect

27  whether the vehicles were sold with an alignment defect").  Plaintiffs cannot show that a

28  common defect exists simply by making conclusory allegations that Maxtor's manufacturing

6

1    process is substandard.

2        **3. Typicality**

3        "Typicality focuses on the relationship of facts and issues between the class and its

4    representatives." *Dukes*, 603 F.3d at 613.  "Representatives claims are 'typical' if they are

5    reasonably coextensive with those of absent class members; they need not be substantially

6    identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

7        Each of Plaintiffs' legal theories relies in part on the existence of a warranty,[5] yet it is

8    unclear whether three out of the four named class representatives can show that the alleged hard

9    drive failures occurred during the life of their particular warranty.  Plaintiff Heisler testified that

10   he has not been able to locate a receipt for his Maxtor hard drive.  Stagg Decl., Ex. D at 38:11-

11   19, 39:13-19, 46:5-7.  At the time of the alleged failure of his drive, he contacted Maxtor

12   customer service, which calculated the warranty period based on the manufacture date and found

13   that the warranty had expired.  *Id.* at 38:11-19.  Plaintiff Traub admitted at his deposition that he

14   was aware that his warranty had expired at the time his hard drive allegedly failed.[6]  Stagg Decl.,

15   Ex. A 48:15-23.  Yet, in his declaration filed in support of the instant motion for class

16   certification, Traub claims that his hard drive failed within one year of purchase, implying that it

17   failed during the life of the warranty.  Traub Decl. ¶ 6.  Plaintiff Agerton testified at her

18   deposition that when her drive broke down, she contacted Maxtor and was informed that the

19

20

21        ───────────────

22        [5] In the TAC, Plaintiffs claim that Defendant (1) violated the C.L.R.A. by
     misrepresenting that the hard drives were free from defects in its warranty, marketing, and
23   advertising (TAC ¶ 60); (2) violated the Cal. Bus. & Prof. Code by misrepresenting the true
     nature of the affected hard drives and/or concealing the true defective nature of the drives in its
24   warranty, marketing, and advertising (TAC ¶ 75); (3) breached its express warranty by supplying
     defective hard drives (TAC ¶ 85); and (4) was unjustly enriched by these wrongful acts or
25   omissions (TAC ¶ 96).

26        [6] Traub was asked, "Is there any particular reason you didn't call Maxtor?"  Traub replied,
     "My experience in the past with electronics devices that are out of warranty is that you usually
27   don't get friendly responses, when they're out of warranty."  When asked to confirm whether or
     not he understood that the hard drive was outside the warranty period, he replied, "Yes."  Stagg
28   Decl., Ex. A at 48:15-23.

Case No. 5:06-cv-06634-JF (PVT)
ORDER DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(JFLC1)

1    product was out of warranty.[7]  Stagg Decl., Ex. B 55:5-56:5.  In her declaration, she asserts that

2    this information was incorrect.  Agerton Decl. ¶ 6.  Any remaining warranty was voided when

3    Agerton requested that a Comp USA employee break the warranty seal on or around September

4    2006–less than one year after Agerton's purchase.  Stagg Decl., Ex. B 37:11-38:3.  Agerton

5    acknowledged that she understood that tampering with the warranty seal would cause her to lose

6    any warranty protection she had as a purchaser for the product.  *Id.* at 56:14-19.  Although the

7    alleged failure of Plaintiff Temple's two hard drives occurred within the warranty period,

8    Temple returned the drives in exchange for a full refund and suffered no data loss.[8]  Stagg Decl.,

9    Ex. C 56:2-19; 58:25-59:3.

10         Based on this evidence, it is far from clear that the named Plaintiffs have suffered a

11    cognizable injury, let alone an injury that is common to the class.  Adhering to Ninth Circuit

12    precedent, this Court previously has held that in a class action suit, "Article III requires that the

13    representative or named plaintiff must share the same injury or threat of injury."  *Stearns v.*

14    *Select Comfort Retail Corp.*, No. 08-2746-JF (PVT), 2009 WL 4723366, at *16 (N.D. Cal. Dec.

15    4, 2009) (citing *DuPree v. U.S.*, 559 F.2d 1151, 1153 (9th Cir. 1977)).  Plaintiffs argue that the

16    warranty defense offered by Defendant is a common defense going to the elements of each

17    putative class member's breach of warranty claim and the named Plaintiffs' claims thus are

18    typical because the class representatives are not subject to unique defenses.  Dkt. 185 at 10.

19    However, this argument  overlooks the fact that injury within the warranty period is a threshold

20    requirement in order to bring a claim based upon a warranty.

21    **4. Adequate Representation**

22    "This factor requires: (1) that the proposed representative Plaintiffs do not have conflicts

23

24    [7] Agerton's declaration in support of class certification alleges that she owned two failed

25    Maxtor drives.  Agerton Decl. ¶¶ 2, 5.  However, Agerton testified that the second drive did not experience a complete failure, and that she stopped using it because it was slow.  Stagg Decl.,

26    Ex. B at 90:15-23.

27    [8] Temple testified that the data stored on the first drive was protected by a mirror back-up

28    stored on another device and that he experienced problems with the second drive before storing any data on it.  Stagg Decl., Ex. C at 53:16-54:2; 57:16-22.

8

1  of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and

2  competent counsel." *Dukes*, 603 F.3d at 614.  Maxtor argues that Plaintiffs' purported lack of

3  standing is enough to create a conflict of interest with putative class members.  Dkt. 181 at 34.

4  "Lead plaintiffs must show that they personally have been injured, 'not that injury has been

5  suffered by other, unidentified members of the class to which they belong and which they

6  purport to represent.'" *In re Wells Fargo Mortgage-Backed Certificates Litigation*, 712 F. Supp.

7  2d 958, 964 (N.D. Cal. 2010) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  However, as

8  stated above, it is not clear that all of the named Plaintiffs lack standing.

9      Maxtor also alleges that Plaintiffs Agerton and Temple have a special relationship with

10  Plaintiffs' counsel, Lori Sklar, because both provided declarations for Ms. Sklar in a motion to

11  oppose inspection of her billing records in connection with her fee application in an unrelated

12  class action. Dkt. 181 at 35.  However, these declarations likely were filed in an effort to protect

13  attorney-client communications in connection with the instant motion.

14      Maxtor next contends that the named Plaintiffs have submitted declarations that

15  contradict their prior sworn testimony, calling their credibility into question.  However, it is not

16  apparent from the record that any Plaintiff has made directly inconsistent statements.  *Id.*

17  Maxtor also asserts that the named Plaintiffs as a group do not possess the minimal level of

18  interest in the action and familiarity with the proceedings to represent the class adequately

19  because, among other things, they were not named in the original complaint and have not

20  attended any of the proceedings except for their individual depositions.  *Id.* at 34-35.  These

21  allegations do not suggest a conflict of interest sufficient to cast doubt upon the adequacy of

22  representation in this action.

23      Finally, Maxtor requests that the Court take judicial notice that Ms. Sklar recently was

24  sanctioned for misconduct in a separate class action.  Dkt. 183.  However, the sanction currently

25  is on appeal, and it would be inappropriate for the Court to take judicial notice at this time.[9]

26

27  _____

28  [9] Sklar Decl. in support of Plaintiffs' objection to Defendant's request for judicial notice ¶¶ 6, 7.

Case No. 5:06-cv-06634-JF (PVT)
ORDER DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(JFLC1)

**B. Rule 23(b)(3) Requirements**

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation . . . a standard 'far more demanding' than the commonality requirement of Rule 23(a)." *Dukes*, 603 F.3d at 593 (citing Amchem *Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997)).  Plaintiffs cannot meet this standard if issues common to the class are lacking at the outset, as is the case here.

## IV. ORDER

Plaintiffs' motion for class certification is DENIED without prejudice.  Any renewed motion shall be filed within thirty (30) days after the date of this order.  Any motions for summary judgment also shall be filed at that time.[10]


DATED: November 17, 2010
_____
JEREMY FOGEL
United States District Judge

---

[10] In determining the instant motion, the Court has not relied on the portions of Wallash and Cochran declarations specifically objected to by Plaintiffs.  Accordingly, Plaintiffs' objection to these declarations is terminated as moot.  Maxtor's request for judicial notice and Plaintiffs' objection to Maxtor's surreplies also are DENIED as moot.

Case No. 5:06-cv-06634-JF (PVT)
ORDER DENYING WITHOUT PREJUDICE PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
(JFLC1)