1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**E-Filed 4/20/2011**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

BRIAN HEISLER, ROB TEMPLE, THOMAS TRAUB, and JODY AGERTON, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

MAXTOR CORPORATION,

Defendant.

Case No. 5:06-cv-06634-JF (PSG)

ORDER[1] GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING RENEWED MOTION FOR CLASS CERTIFICATION

[Re: Docket Nos. 203, 205, 209, 249]

Plaintiffs Brian Heisler, Rob Temple, Thomas Traub, and Jody Agerton ("Plaintiffs")

allege that Defendant Maxtor Corporation ("Maxtor") designed, marketed, and sold defective

hard disk drives ("HDDs") between November 2003 and January 2011.   Based on these

allegations, Plaintiffs assert claims for breach of express warranty; violations of the California

Consumer Legal Remedies Act, Cal. Civ. Code § 1770, *et seq.* ("CLRA");[2] violations of

California's unfair competition and false advertising laws, Cal. Bus. & Prof. Code § 17200

---

[1] This disposition is not designated for publication in the official reports.

[2] Plaintiffs also make reference to Cal. Civ. Code § 1750; however, this section has been preempted by the Federal Food Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.  See Perez v. Nidek Co. Ltd.*, 657 F. Supp. 2d 1156 (S.D. Cal. 2009).

("UCL") and § 17500 ("FAL"); and unjust enrichment.

Plaintiffs seek to certify a class comprised of end-users and purchasers of four different Maxtor HDDs and a sub-class comprised of those individuals who experienced trouble accessing, storing and/or retrieving data from the HDDs within one year or ninety days from purchase date. Additionally, Plaintiffs seek relief from the case management schedule to submit a late expert witness report in support of class certification and leave to file supplemental briefing regarding the qualifications of their expert. Maxtor moves for summary judgment on all claims and alternatively seeks dismissal with prejudice for lack of subject-matter jurisdiction.

Because they will not affect the ultimate disposition of the parties' substantive motions, Plaintiffs' requests for relief from the case management schedule and leave to file supplemental briefing will be granted. Having considered the evidence in the record and the applicable law, the Court concludes that no reasonable jury could find in Plaintiffs' favor. Accordingly, Maxtor's motion for summary judgment will be granted, and Plaintiffs' renewed motion for class certification will be denied as moot.

**I. BACKGROUND**

Plaintiffs filed this action on October 14, 2006. They have amended their complaint on three separate occasions, and the Court previously denied a motion for class certification without prejudice.[3] In its order denying the class certification motion, the Court instructed Plaintiffs to provide a more precise class definition that would identify among other things an objective defect in the Maxtor drives.[4] In their renewed motion, Plaintiffs have altered the definition of the proposed class and now seek to certify a class consisting of:

> All end-user persons or entities that purchased a Maxtor One Touch I Family, One Touch II Family, One Touch III Family, Personal Storage 3100 Family, and/or Personal Storage 3200 Family hard disk drive(s) in California manufactured by Maxtor Corporation between November 1, 2003 and January 1, 2011 (the "Class Period"). Excluded from the Plaintiff Class are (a) Maxtor, any entity in which Maxtor has a controlling interest, and their legal representatives,

---

[3] Order Denying Without Prejudice Plaintiffs' Motion for Class Certification, November 17, 2010, Dkt. 196.

[4] *Id.* at 3-4.

Case No. 5:06-cv-06634-JF (PSG)
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING RENEWED
MOTION FOR CLASS CERTIFICATION
(JFLC1)

1
2
heirs and successors; (b) any judge to whom this case is assigned, and any member of the judge's immediate family; (c) claims for personal injury and/or emotional distress.

3
4
5
6
7
8
9
10
**Warranty Subclass:**
All end-user persons or entities that purchased a Maxtor One Touch I Family, One Touch II Family, One Touch III Family, Personal Storage 3100 Family, and/or Personal Storage 3200 Family hard disk drive(s) in California manufactured by Maxtor Corporation between November 1, 2003 and January 1, 2011 (the "Class Period") that could not access, store, and/or retrieve data within one year (One Touch I, II, or III drives) or 90 days (Personal Storage drives) of their purchase date. The proposed class includes end-user persons or entities that received Maxtor One Touch I Family, One Touch II Family, One Touch III Family, Personal Storage 3100 Family, and/or Personal Storage 3200 Family warranty replacement hard disk drives. Excluded from the Plaintiff Class are (a) Maxtor, any entity in which Maxtor has a controlling interest, and their legal representatives, heirs and successors; (b) any judge to whom this case is assigned, and any member of the judge's immediate family; (c) claims for personal injury and/or emotional distress.

11
12
13
14
Renewed Motion for Class Certification ("Renewed Class Cert. Motion") at 4-5, Dkt. 205 Plaintiffs also seek leave to amend their complaint to add two additional named Plaintiffs–Mitchel Noble and Cliff Gonshery–as representatives of the proposed California subclass.

15
16
17
18
Maxtor moves for summary judgment on the basis that Plaintiffs lack standing to sue and have not presented sufficient evidence of a common defect in Maxtor drives that would support a claim for breach of warranty, unjust enrichment, or misrepresentation under the CLRA, UCL or FAL. Maxtor argues that lack of standing alone requires dismissal of the claims with prejudice.

19
## II. LEGAL STANDARD

20
21
22
23
24
25
26
27
A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[T]he burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that

28

1    there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

2           If the moving party meets this initial burden, the burden shifts to the non-moving party to

3    present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e);

4    *Celotex,* 477 U.S. at 324.  A genuine issue for trial exists if the non-moving party presents

5    evidence from which a reasonable jury, viewing the evidence in the light most favorable to that

6    party, could resolve the material issue in his or her favor.  *Anderson,* 477 U.S. 242, 248-49, 106

7    S.Ct. 2505, 91 L.Ed.2d 202; *Barlow v. Ground,* 943 F.2d 1132, 1134-36 (9th Cir. 1991).

8    However, "[a] non-movant's bald assertions or a mere scintilla of evidence in his favor are both

9    insufficient to withstand summary judgment."  *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir.

10   2009).

11                                    **III. DISCUSSION**

12   **A.      Motion for Relief from Case Management Schedule**

13          On November 16, 2010, the parties stipulated to extend the date for initial expert witness

14   disclosures to the earlier of six court days after the Court's ruling on Plaintiffs' motion for class

15   certification or December 8, 2010.  Stipulated Request for Extension of Deadlines for Expert

16   Disclosures, Expert Reports, and Expert Discovery Cut-Off, Dkt. 195.  The stipulated order was

17   signed by the Court on November 23, 2010, and filed by the Clerk on December 2, 2010.

18   Stipulation and Order Granting Request for Extension of Deadlines for Expert Disclosures,

19   Expert Reports, and Expert Discovery Cut-Off, Dkt. 200.   The Court's ruling on the motion for

20   class certification was filed on November 17, 2010.  Order Denying Without Prejudice Plaintiffs'

21   Motion for Class Certification, November 17, 2010, Dkt. 196.  Maxtor filed its expert

22   disclosures on November 29, 2010, despite not having received notice of the Court's approval of

23   the stipulation.  Stagg Decl. ISO Opposition to Plaintiffs' Motion for Relief from Case

24   Management Schedule ¶ 3, Dkt. 211.  Plaintiffs did not file their expert disclosures until

25   December 8, 2010. Sklar Decl. ISO Plaintiffs' Motion for Relief from Case Management

26   Schedule ¶ 11, Dkt. 209.  They explain that a family emergency prevented their expert, Stephen

27   Fowler, from completing his report prior to that date, and they ask that the Court amend its order

28   approving the stipulation nunc pro tunc to permit expert disclosures on or before December 8,

                                                      4

2010.[5]

Maxtor opposes the motion, arguing that an untimely filed expert report violates Fed. R. Civ. P. 26(a)(2), which requires that parties disclose the identity of expert witnesses and produce all relevant reports "at the times and in the sequence that the court orders." Maxtor argues that admission of the expert report would be prejudicial because Plaintiffs had the benefit of reviewing Maxtor's expert reports for eleven days prior to making their own disclosures. Maxtor also claims that Plaintiffs have not acted with due diligence, as evidenced by the fact that they did not seek relief from the case management schedule until December 30, 2010–nearly one month after they filed Fowler's expert report. *See* Motion for Relief from Case Management Schedule, Dkt. 209.

A scheduling order may be modified for good cause. Fed. R. Civ. P. 16(b)(4). Because Fowler's expert report is highly relevant to the analysis of Plaintiffs' claims, the Court will permit it to be included in the record. Particularly in light of the disposition of its motion for summary judgment, Maxtor will not be prejudiced by inclusion of the report; Maxtor was able to review the report and depose Fowler prior to filing its reply brief and its brief in opposition to Plaintiffs' renewed motion for class certification.[6]

**B.     Application for Leave to File Supplemental Brief Regarding Expert Qualifications**

Subsequent to oral argument on the instant motions, Plaintiffs sought leave to submit, and did submit conditionally, supplemental briefing with respect to Fowler's qualifications. *Ex Parte*

---

[5] Plaintiffs' counsel first notified Maxtor of a delay on November 29, 2010, after receiving a request for extension from Fowler. However, Plaintiffs assert that they were unaware of Fowler's family emergency at the time, and believed that the delay was caused by the Thanksgiving holiday. They represent that they did not learn of the emergency until December 2, 2010, at which time they emailed Maxtor to explain the extenuating circumstances and to request an amendment to the previous stipulation that would permit the report to be filed on or before December 8, 2010. Motion for Relief from Case Management Schedule, Dkt. 209.

[6] Although Maxtor's opposition brief was due the day immediately following Fowler's deposition, Maxtor summarized Fowler's relevant testimony in its opposition brief and provided a supplemental declaration identifying the relevant excerpts once the deposition transcript became available. *See* Stagg Supp. Decl. ISO Defendant Maxtor Corporation's Opposition to Renewed Class Certification Motion ("Stagg Supp. Decl."), Dkt. 227.

5

Case No. 5:06-cv-06634-JF (PSG)
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING RENEWED
MOTION FOR CLASS CERTIFICATION
(JFLC1)

1
2
Application to File Supplemental Brief Relating to Expert Qualifications of Stephen L. Fowler, Dkt. 249.  In order to ensure a complete record, the application will be granted.

3
**C.     Motion for Summary Judgment**

4
5
6
7
8
9
10
Maxtor contends that none of the named Plaintiffs has the requisite standing to bring suit, and that accordingly the Court lacks subject matter jurisdiction over Plaintiffs' purported class action.  "It is axiomatic that standing under Article III of the United States Constitution is a threshold requirement in every civil action filed in federal court." *In re Flash Memory Antitrust Litigation*, No. C 07-0086 SBA, 2010 WL 2465329, at *2 (N.D. Cal. June 10, 2010).  It argues that because they have not shown that Maxtor breached any warranty, Plaintiffs may not bring claims for breach of warranty, misrepresentation, or unjust enrichment.

11
**1.     Breach of Warranty**

12
13
14
15
16
17
18
The express warranty that accompanied each Maxtor product purchased by the named Plaintiffs reads as follows: "Maxtor warrants to the original consumer purchaser ("you") that new Maxtor disk drive products ("New Products") will be free from defects in material and workmanship for the Standard Warranty Period for the relevant New Product." Third Amended Complaint ("TAC") ¶ 84.  Maxtor contends that even viewing the evidence in the light most favorable to Plaintiffs, none of the named Plaintiffs can show that Maxtor breached the warranty within the warranty period.

19
20
21
22
23
24
Plaintiff Heisler acknowledged in his discovery responses that he has not been able to locate a receipt for his Maxtor hard drive.  Stagg Decl. ISO Opposition to Motion for Class Certification ("Stagg Decl."), Ex. D at 38:11-19, 39:13-19, 46:5-7, Dkt. 181.  At the time of the alleged failure of the drive, Heisler contacted Maxtor's customer service department, which calculated the warranty period based on the drive's date of manufacture and determined that the warranty had expired.  *Id.* at 38:11-19.

25
26
Plaintiff Temple alleges that he purchased two hard drives, both of which experienced problems within the warranty period.  Temple Decl. at ¶¶ 2-6, Dkt. 171.  However, Temple

27
28

6

admits that he returned the drives for a full refund and ultimately suffered no loss of data.[7]  Stagg Decl., Ex. C 56:2-19; 58:25-59:3.  In his deposition testimony, Plaintiff Traub admitted that he was aware that his warranty had expired at the time his hard drive allegedly failed.[8]  However, in his declaration filed in support of Plaintiffs' original motion for class certification, Traub claimed that his hard drive failed within one year of purchase, implying that it had failed during the life of the warranty.  Traub Decl. ¶ 6, Dkt. 171.

Similarly, Plaintiff Agerton testified at her deposition that she contacted Maxtor when her drive broke down and was informed that the product was out of warranty.[9]  Stagg Decl., Ex. B 55:5-56:5.  In her declaration, she asserts that this information was incorrect.  Agerton Decl. ¶ 6, Dkt. 171.  Nonetheless, any remaining warranty was voided when Agerton requested that a Comp USA employee break the warranty seal in or around September 2006–less than one year after Agerton purchased the drive.  Stagg Decl., Ex. B 37:11-38:3.  Agerton acknowledged that she understood that tampering with the warranty seal would cause her to lose any warranty protection she had as the purchaser of the product.  *Id.* at 56:11-19.

Agerton and Traub cannot undercut their deposition testimony with contradictory declarations.  "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."  *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991).  Both Agerton and Traub have admitted under oath that their drives first experienced problems after the warranty had expired.  Heisler cannot verify his

---

[7]  Temple's declaration in support of Plaintiffs' motion for class certification states that "As a result of the failures I lost all of my data stored on the hard drives.  However, I was able to retrieve my data through backups."  Temple Decl. at ¶ 7, Dkt. 171.

[8]  Traub was asked, "Is there any particular reason you didn't call Maxtor?"  He replied, "My experience in the past with electronics devices that are out of warranty is that you usually don't get friendly responses, when they're out of warranty."  When asked to confirm whether or not he understood that the hard drive was outside the warranty period, he replied, "Yes."  Stagg Decl., Ex. A at 48:15-23.

[9]  Agerton's declaration in support of Plaintiffs' original motion for class certification alleges that she owned two failed Maxtor drives.  Agerton Decl. ¶¶ 2, 5.  However, Agerton testified at her deposition that the second drive did not experience a complete failure, and that she stopped using it because it was slow.  Stagg Decl., Ex. B at 90:15-23.

7

1  purchase date, and Temple admittedly was made whole.  Accordingly, Plaintiffs have not
2  demonstrated that a breach occurred within the term of the warranty.

3            **a.      Inherent Defect Theory**

4          Plaintiffs argue alternatively that a breach of warranty claim "does not require proof the
5  product has malfunctioned but only that it contains an inherent defect which is substantially
6  certain to result in malfunction during the useful life of the product."  *Hicks v. Kaufman & Broad*
7  *Home Corp.*, 89 Cal. App. 4th 908, 918 (2001).   Relying solely on Fowler's expert report,
8  Plaintiffs claim that the Maxtor HDDs were inherently defective as a result of design flaws and
9  thus it is irrelevant whether they experienced actual problems with their drives during the life of
10  the warranty.

11         It is unclear whether *Hicks* even applies in the context of consumer goods.  As one court
12  observed, "If *Hicks* does in fact create such an exception to the general rule that an Express
13  Warranty does not make a manufacturer responsible for repairs required after the warranty
14  expires . . . it does not apply to consumer goods such as televisions."  *In re Sony Grand Wega*
15  *KDF-E A10/A20*, Nos. 08-CV-2276-IEG, 09-CV-0620-IEG, 09-CV-0736-IEG,
16  09-CV-2703-IEG, 2010 WL 4892114, at *15 (S.D. Cal. Nov. 30, 2010); *In re Toyota Motor*
17  *Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*,
18  No. 8:10ML 02151 JVS, 2010 WL 4867562, at *24 (C.D. Cal. Nov. 30, 2010) ("As the *Hicks*
19  court expressly recognized, its analysis was shaped by the unique nature of the product that was
20  alleged to be defective: A product used in the construction of home concrete slab foundations. .
21  .").  However, even assuming that *Hicks* could be applied here, there is no plausible evidence of
22  an inherent defect in the subject drives.  The *only* evidence Plaintiffs offer in support of their
23  inherent defect theory is Fowler's observations, and as explained below, these observations are
24  inadmissible under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (U.S. 1993) and Fed. R.
25  Evid. 702.

26            **i.      Admissibility of Fowler's Expert Testimony**

27         Plaintiffs offer Fowler as an expert in electrical engineering who is qualified to offer
28  opinions on the cause of the alleged HDD problems experienced by Maxtor's customers.  In his

8

expert report, Fowler concludes that the HDDs contain design defects that are common to all drives.[10]  *See* Plaintiffs' Initial Expert Report of Stephen L. Fowler ("Fowler Expert Report"), at 7:1-9, Dkt. 206.  According to Fowler, Maxtor uses "faulty coating" on its HDD platters[11] and "faulty filters" in its hard disk assembly.[12]  Maxtor contends that these conclusions are nothing more than bare assertions that are unsupported by data, reliable methodology, or reliable application of the methodology to the data.  It argues that Fowler's testimony as a whole lacks evidentiary value and should be stricken.

Pursuant to Fed. R. Evid. 702, experts must be qualified "by knowledge, skill, experience, training, or education."  Expert opinions are admissible only if  "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702.  *Daubert* requires courts to assess "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue."  509 U.S. 579, at 592-93.  The court

---

[10] Plaintiffs refer to these as manufacturing and design defects in their moving papers. *See, e.g.,* MSJ Opp. Br. at 6, Dkt. 225  "Plaintiffs' claims are based upon Maxtor's alleged defective design and manufacture of Maxtor's hard drives."  However, Fowler does not provide an opinion with respect to manufacturing defects.  At his deposition, Fowler was asked to confirm that he "did not provide an opinion as to whether there was a manufacturing defect . . ." He replied, "That's correct." Stagg Supp. Decl., Ex. A at 70:14-16, 71:3.

[11] An HDD "uses round, flat disks called platters, coated on both sides with a special media material designed to store information in the form of magnetic patterns."  Fowler Decl. ¶ 33, Dkt. 205.

[12]     The Maxtor HDDs involved in this case have uniform design defects and actual, material performance problems resulting in significant degradation of the HDDs and ultimate premature failures.  More specifically, Maxtor has faulty platters and their coatings lead to premature failures.  Maxtor's faulty platter coatings exhibit large [error correction count ("ECC")] and seek errors which lead to substantial degradation of the platter reading quality and also lead to a high failure rate.  Maxtor also has faulty hard disk assembly (HAD) enclosures including faulty filters that lead to particle contamination, large seek errors and head crashes.

Fowler Expert Report, at 7:1-9.

9

1    acts as a "gatekeeper" to ensure that expert testimony is both relevant and reliable. *Id.* at 597.

2        A district court has broad latitude in deciding how to measure reliability and in making

3    the ultimate reliability determination. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142

4    (1999). When evaluating expert testimony, courts may consider "(a) whether the theory or

5    technique can and has been tested; (b) whether the theory or technique has been subjected to peer

6    review and publication; (c) the known or potential rate of error for the technique; and (d) the

7    theory or technique's general degree of acceptance in the relevant scientific community." *Boyd*

8    *v. City and County of San Francisco*, 576 F.3d 938, 945 (9th Cir. 2009) (citing *Daubert*, 509

9    U.S. at 593-94). These factors are not intended to be exclusive. *See Kumho*, 526 U.S. 137 at

10   158. The court's focus must be "on principles and methodology, not on the conclusions that they

11   generate." *Daubert*, 509 U.S. at 595.

### (1) Reliability of Fowler's Testing Methods

13       This Court previously has observed that, "in recent years, courts have exhibited a greater

14   willingness to test the viability of methodologies that experts propose to show class wide impact

15   and injury using common proof, and are increasingly skeptical of plaintiffs' experts who offer

16   only generalized and theoretical opinions that a particular methodology may serve this purpose

17   without also submitting a functioning model that is tailored to market facts in the case at hand."

18   *In re eBay Seller Antitrust*, 07-01882 JF, 2009 WL 2779374, at *1 (N.D. Cal. Sep. 1, 2009)

19   (citing *In re Graphics Processing Units Antitrust Litig.*, 253 F.R.D. 478, 492 (N.D. Cal. 2008).

20       Fowler purports to have conducted a "backward analysis" to determine the cause of the

21   alleged drive problems encountered by Plaintiffs. *See* Stagg Supp. Decl., Ex. A at 81:10-13.

22   Fowler does not explain what he means by "backward analysis," other than to describe it as a

23   method that begins by analyzing symptoms in order to determine their causes.[13] In their

---

25   [13] For example, Fowler explained at his deposition that, "[his] opinion is a backward
26   analysis of ECC and what would cause that . . ." Stagg Supp. Decl., Ex. A at 81:10-11. He stated
     that, "it's very much like a disease. You are looking at the symptoms and the original cause may
27   be masked by all the symptoms that are the result of the original cause." *Id.* at 61:9-12. "All of
     these things, when you put it together, lead you to multiple symptoms that can be brought back
28   down to a few causes and those few causes is what I tried to outline in my expert report." *Id.* at

1  supplemental briefing, Plaintiffs attempt to equate "backward analysis" with reverse engineering.

2  However, nowhere in his declaration, report, or deposition testimony does Fowler state that he

3  utilized reverse engineering, and his methodology may not be re-labeled as such simply because

4  it is premised upon "backward" analytical steps.

5      More troubling is the fact that Plaintiffs offer no evidence that Fowler's approach is an

6  accepted method for analyzing defects such as those at issue here,[14] nor do they offer evidence

7  with respect to the reliability of the tests that Fowler performed.  These tests include an error

8  correction report that Fowler ran on several drives using the SpinRite software program, and a

9  "gross visual examination" that Fowler conducted on a Maxtor drive the source of which he

10  cannot recall.[15]  Sherman Decl. ISO Renewed Motion for Class Certification ("Sherman Decl."),

11  Ex. 3 at 101:13, Dkt. 233.  Fowler had no experience with the SpinRite program prior to this

12  case, and he admittedly was unaware of the program's existence until the day that testing was

13  performed.  Stagg Supp. Decl., Ex. A at 136:7-12.  He learned about the program from a "local

14  computer guy" who was brought to the testing session by Fowler's colleague, Bruce Carson.  *Id.*

15  at 133:25-135:16.  Fowler does not "know how the SpinRite actually comes up with the error

16  rate" and has "no direct knowledge that SpinRite is incompatible or compatible with Maxtor

17  [HDDs]."  *Id.* at 143:12-13, 152:22-23.  Only after the testing took place did Fowler research

18  SpinRite, and even then he learned only that "it was a software program that's been out in the

19  market a long time to determine how a drive is performing. That's it."  *Id.* at 136:22-25.

20      Plaintiffs offer no evidence that SpinRite meets the industry standard for testing HDDs,

21  or that engineers commonly use visual inspections to diagnose design defects in HDDs.  Fowler

22  _____

23  62:5-9.

24      [14] Plaintiffs claim that reverse engineering is a widely-accepted methodology, and that
   Fowler was certified as an expert in that methodology in a prior case–*Morton v. Cisetronix.*

25  Fowler refers to this case as *Morton v. Disetronix* in both his declaration and report, and neither
   Fowler nor Plaintiffs provide a full citation.

26

27      [15] Fowler testified at his deposition that he could not "remember if [the drive] was
   something that [he] bought or was one of the drives that was sent in . . ." Sherman Decl. ISO

28  Renewed Motion for Class Certification, Ex. 3 at 99:18-20, Dkt. 233.

Case No. 5:06-cv-06634-JF (PSG)
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING RENEWED
MOTION FOR CLASS CERTIFICATION
(JFLC1)

admits that he was unable to determine whether a defect existed in the drive platters or filters based on visual inspection alone.  Sherman Decl., Ex. 3 at 101:15-23.  This simply is not a reliable foundation upon which to base opinions about a common defect.

### (2) Sufficiency of the Evidence Relied upon by Fowler

In preparing his expert report, Fowler reviewed the results obtained from the SpinRite testing, his gross visual examination of the Maxtor drive, and a March 2010 inspection of Maxtor drives performed by Maxtor's expert, Dr. Albert Wallash.  Fowler Decl. ¶¶ 16-25.  Fowler also reviewed Maxtor's discovery responses, deposition testimony, and declarations in addition to online articles discussing HDD design and failures.  *Id.*

Only a handful of Maxtor drives were analyzed in the Wallash and Fowler tests.  The Wallash inspection consisted of tear-down testing of three drives produced by Heisler, Traub, and Agerton.[16]  Stagg Decl. ¶ 17.  Fowler's gross inspection tested only one Maxtor drive,[17] and his SpinRite analysis was performed on only Traub's drive, four other Maxtor drives produced by putative class members, and one Maxtor control drive that Fowler purchased on eBay.[18]  Stagg Supp. Decl., Ex. A at 145:9-22, 153:22-154:5.  Fowler does not explain how test results for roughly fifteen Maxtor drives can be generalized to support a common defect theory that holds true for all Maxtor drives.  In fact, he admits that in conducting the SpinRite analysis he made no determination as to the number of drives that would need to be inspected in order to

---

[16] The Wallash inspection was conducted pursuant to a joint stipulation and court order.  Order Adopting Stipulation Regarding Conduct of Inspection and Testing, Dkt. 159.  The inspection was attended by Fowler and by counsel for both parties.  Stipulation Regarding Conduct of Inspection and Testing of Plaintiffs' Drives ("Joint Stipulation") at 3, Dkt. 158. In addition to testing the three drives produced by Plaintiffs, Wallash inspected three Maxtor control drives.  *Id.*

[17] Sherman Decl., Ex. 3 at 99:18-20.

[18] Fowler testified at his deposition that he did not run a SpinRite report on Heisler's drive because the drive functioned after being connected to a computer, and he could not recall whether he ran any testing on Agerton's drive.  Stagg Supp. Decl., Ex. A at 137:13-139:15.  In addition to running a SpinRite report on the Maxtor control drive, Fowler also tested four Seagate drives and two Western Digital drives for comparison purposes.  *Id.* at 153:6-154:5.

12

1  obtain a statistically significant result.[19]  *Id.* at 174:19-24.

2      Although he claims that all Maxtor drives are virtually identical, Fowler acknowledges

3  that he did not perform a tear-down of each model at issue in this case.  *Id.* at 187:18-20.  He

4  admits his statement that all drives were manufactured in an identical way, using the same

5  defective platters and coating, is merely an assumption.  *Id.* at 188:2-11.  He has "no knowledge

6  of where [Maxtor] get[s] each drive or whether or not they are even made in the same facility."

7  *Id.* at 188:9-11.  Plaintiffs argue that Fowler was forced to make assumptions because of

8  Maxtor's refusal to provide pertinent documentation.  However, Plaintiffs do not explain why,

9  instead of bringing a motion for class certification based on insufficient evidence, they could not

10 have sought to compel further discovery, as they have done previously.  *See, e.g.,* Motion to

11 Compel, Dkt. 73; *Ex Parte* Application for an Order Compelling Compliance with Court's Order

12 of July 31, 2009, Dkt. 115.

13     Proper documentation might have shed at least some light on the basis of Fowler's

14 common defect theory.  However, Fowler provides no documentation of his gross visual

15 inspection in either his declaration or his report, even though the parties provided a detailed list

16 of steps in the case of the Wallash inspection.  *See* Joint Stipulation at 4-8.  Fowler also fails to

17 provide proper documentation of the SpinRite analysis.  He admits that he cannot recall if

18 Traub's drive functioned within its external storage enclosure,  Stagg Supp. Decl., Ex. A at

19 141:16-22, or if he recorded seek-error rates for other drives that might have been tested within

20 their enclosures.  *Id.* at 148:13-18. Instead, he states that his "vague recollection is that may not

21 be possible."  *Id.* at 148:17-18.  Without such details, the record contains no meaningful

22 evidence as to the physical state of each drive at the time of testing.  The absence of proper

23 documentation can prove fatal to the admissibility of expert opinions.  *See Cabrera v. Cordis

24 Corp.*, 134 F.3d 1418, 1422 (9th Cir. 1998) (affirming the exclusion of expert opinion for lack of

25 proper foundation).

27     [19] Fowler claims that in preparation for trial, he would attempt to test additional drives.
28 Stagg Supp. Decl., Ex. A at 175:5-8.

Case No. 5:06-cv-06634-JF (PSG)
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING RENEWED
MOTION FOR CLASS CERTIFICATION
(JFLC1)

1    Fowler also admits that he did not observe personally the error readings reported by the

2    SpinRite software,  Stagg Supp. Decl., Ex. A at 150:12-22, and that the readings were provided

3    to him by the "local computer guy" who performed the tests.  *Id.*  Fowler even concedes that he

4    had no personal understanding of error correction count prior to conducting the SpinRite

5    analysis, and that he found the definition included in his report on "Wikepedia [sic] or a hard

6    disc web site"  *Id.* at 149:13-15.

7    The framework for Fowler's analysis of the SpinRite readings and HDD failure rates is

8    provided by articles Fowler located online.  *See, e.g.,* Stagg Supp. Decl., Ex. A at 150:23-151:6.

9    While it is true that an expert opinion may be based on data collected by others, such facts must

10   be of the type that are "reasonably relied upon by experts in the particular field."  Fed. R. Evid.

11   703; *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1142 (9th Cir. 1997).  Fowler

12   does not explain how the reports upon which he relied meet the criteria of Rule 703.  Plaintiffs

13   argue only that the articles are reliable because "the internet is likely the primary medium

14   through which sophisticated, technology-based companies . . . communicate with their

15   customers."  Supp. Br. at 8.

16   Moreover, even assuming that his reliance upon the articles is proper, the articles do not

17   substantiate Fowler's conclusions regarding failure rates.  Fowler asserts that the acceptable

18   industry failure rate is 2%.  Fowler Decl. ¶ 38.  However, he relies upon only two articles for this

19   proposition, neither of which refers to an industry standard for failure rates.  The articles indicate

20   only that annual failure rates ranging from .88% to less than 2% have been reported in studies.

21   Sherman Decl. ISO Motion for Class Cert., Ex. 6 ("*Failure Trends in a Large Disk Drive*

22   *Population*" by Eduardo Pinheiro, *et al.*), Dkt. 170;  *Id.* at Ex. 7 ("*Disk Failures in the Real*

23   *World: what Does an MTTF of 1,000,000 Hours Mean to You?*" by Bianca Schroeder and Garth

24   A. Gibson).

25   On the basis of this extremely limited and largely second-hand information, Fowler

26   declares that Maxtor's return rates far exceed the industry standard.  Fowler Decl. ¶ 38.  This

27   conclusion not only invokes a questionable metric but also conflates return rates with failure

28   rates.  Although Fowler states that he calculated Maxtor's failure rate by comparing the number

14

of shipments to the number of returns, he acknowledges that a return is not equivalent to a failure. Stagg Supp. Decl., Ex. A at 73:1-74:10.  While Fowler suggests that every return signifies a "problem," a problem is not the same thing as a failure, and Fowler does not explain why it should be treated as such.  *Id.* 74:8-10.

### (3) Fowler's Qualifications

Finally, Plaintiffs have not met their burden of showing that Fowler is qualified to render expert opinions on the alleged defects at issue.   Fowler admits that he has no educational background in HDD design, manufacturing, or failure analysis, and never has served as an expert witness in connection with a case involving these topics.  *Id.* at 30:13-33:22.  He has no work experience in hard drive failure or testing.  *Id.* at 34:19-23.  Instead, his work is focused on electrostatic discharge ("ESD") and radiation testing.  *Id.* at 35:6-16.  Although Fowler bases his common defect theory in part on substandard platter coating, it is clear from his deposition testimony that he does not know what materials typically are used to coat platters, what the optimal materials for such coating are, or what materials are used by Maxtor.  *Id.* at 85:21-86:20, 103:22-104:23.  Similarly, despite claiming that Maxtor manufactures its drives using "faulty filters," he cannot identify a particular filter that Maxtor should have used.  *Id.* at 207:22-24.

Plaintiffs argue that Rule 702 requires only a minimal foundation of knowledge, which is met primarily by Fowler's work in and around the hard drive industry over the past twenty years.  However, the record does not reflect that a significant part of Fowler's work has been in and around the hard drive industry.  Fowler states only that he sold ESD packaging to hard drive manufacturers and often visited hard drive manufacturing facilities.  Sherman Decl., Ex. 3 at 52:9-53:3.  Plaintiffs also claim that Maxtor stipulated that Fowler was qualified as an expert witness when it agreed to his attendance at the tear-down testing in March 2010.  Supp. Br. at 4. However, there is no record evidence of such an agreement, and even if there were, Maxtor still would be entitled to challenge the sufficiency of  Fowler's expert *testimony*.

For all of the foregoing reasons, Maxtor's objection to the admission of Fowler's

testimony is SUSTAINED.[20]

### 2.   Plaintiffs' Evidentiary Objections

Plaintiffs object to various evidence submitted by Maxtor in support of its motion for summary judgment.  However, the Court concludes that it can decide the instant motions without reference to the challenged evidence.  Plaintiffs rely solely on Fowler's report to support their claims, and as explained above that report and the conclusions contained therein are inadmissible under Rule 702 and *Daubert.*  By "pointing out . . . that there is an absence of evidence to support [Plaintiffs'] case," Maxtor has met its burden under *Celotex*, and Plaintiffs have failed to present evidence that would raise an issue of fact for trial.  *Celotex,* 477 U.S. 317 at 325.

### 3.   CLRA, UCL, FAL, and Unjust Enrichment Claims

Plaintiffs base their CLRA, UCL, and FAL claims upon the same inherent defect theory that is offered to support their claim for breach of warranty.[21]  These claims also are subject to summary judgment.  Plaintiffs' claim for unjust enrichment is dependent upon the viability of Plaintiffs' other claims.

## D.   Renewed Motion for Class Certification

In light of the disposition of the motion for summary judgment, the renewed motion for class certification will be terminated as moot.[22]

---

[20] Plaintiffs contend that they should be permitted to replace Fowler with a qualified witness because they expressly reserved the right to replace an unavailable expert witness in their initial expert disclosure statement. Supp. Br. at 9.  However, Fowler is not *unavailable* merely because his opinion is inadmissible.

[21] Plaintiffs contend that Maxtor's warranty also violates the CLRA, UCL, and FAL by affirmatively misrepresenting that Maxtor will repair or replace defective HDDs, when in fact Maxtor never repairs HDDs.  However, the warranty indicates only that Maxtor will replace or repair defective HDDs "*at its option,*" (*See, e.g.,* Stagg Decl. ISO Motion for Summary Judgment, Exs. E, F, Dkt. 203); Maxtor representative David Cochran states in his declaration that Maxtor chooses to replace defective HDDs with drives "of the same capacity or higher." Cochran Decl. ¶ 20, Dkt. 181.  Plaintiffs argue that even this return process is insufficient to overcome Maxtor's alleged misrepresentation because of the inherent design defects common to all HDDs, but as discussed at length above there is no admissible evidence to support the existence of such inherent defects.

[22] Plaintiffs' request to add additional named Plaintiffs also is moot.

16

Case No. 5:06-cv-06634-JF (PSG)
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING RENEWED
MOTION FOR CLASS CERTIFICATION
(JFLC1)

1

## IV. ORDER

2      Plaintiffs' requests for relief from the case management schedule and for leave to file

3 supplemental briefing are GRANTED.  There being no material dispute as to whether Plaintiffs

4 have standing or whether there is a common defect in the Maxtor HDDs, Maxtor's motion for

5 summary judgment is GRANTED, and Plaintiffs' renewed motion for class certification is

6 TERMINATED as moot.

7

8 DATED: April 20, 2011                                    _____
                                                          JEREMY FOGEL
9                                                         United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 5:06-cv-06634-JF (PSG)
ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING RENEWED
MOTION FOR CLASS CERTIFICATION
(JFLC1)